Good morning, ladies and gentlemen. Our first case for this morning is Sommerfield v. City of Chicago. Mr. Longo. May it please the Court. Good morning. Good morning, Counsel. Your Honors, regarding the retaliation count, the District Court did not give the plaintiff any notice that it would be concentrating on what we call the opinions questions. It's not something that the defendants argued fully in their motion. And they didn't ask these questions at the three depositions that they took of the plaintiff, far exceeding seven hours. In the supplemental citation that we provided to Your Honors, Your Honors have held that on cross motions for summary judgment, the District Court must look at all of the evidence before it and determine if there are materially disputed facts. The reason why we mention that is because in the summary judgment filings, we had presented answers to the opinions questions, as we call them. And we even put that in the motion for summary judgment, citing transcripts, what pages in the summary judgment filings all of these questions were. So, in short, aside from the fact that we didn't have notice that the court would be concentrating on these questions, we had answered all of these questions in the summary judgment filings. Putting that aside, court of appeals have held that the specificity required by the District Court is just not, it's not, it's error for the District Court to require it on summary judgment. That specificity is something that the jury would determine. The dates. No, I mean, I think you're maybe not stating this the right way. Okay. In the Northern District of Illinois, which is a very common system around the country, when somebody moves for summary judgment, there's the Rule 56.1 statement. That has to be quite specific about what facts you would be putting in front of the jury to support your side. The other side will do the same thing, and the judge, who's a very busy person, needs to have these things teed up to see if there is some material issue that needs to go to the jury. So I think that was a big part of the problem here. It just wasn't done. Clearly, in a way that the judge could see what the issues were. And the judge is not, as they repeatedly say, supposed to scour through the record to find these things. But no scouring was necessary because it was in the documents right before the District Court. The District Court didn't think you cited specifically enough. You can't just say infrasupra. You have to be specific. I didn't say infrasupra regarding those answers to those opinion questions because it was not an issue that the defendants raised for me to address in the section on retaliation. And the specificity required by the court was dates, etc. Would a reasonable person remember if we said to you, burns you, burn, we're going to burn you in a furnace, and a few times a week, month after month, week after week, year after year, how could you possibly remember every time that was said? And that's the type of specificity that the District Court required. Dates, things like that. And court of appeals have held that that specificity is not required at summary judgment. Of course, we have to provide sufficient facts to demonstrate there's materially disputed facts. But the type of specificity, I think, violates the Supreme Court standard in Burdine in which the plaintiff's burden is not onerous. Well, I'm not so sure after a lot of water has gone under the bridge in the summary judgment field. Okay. But even if we didn't reject that argument, why could we not mention as part of our harassment claim that, for example, the city repeatedly refused to or repeatedly required Mr. Summerfield to work alone in dangerous areas without a partner? Those allegations were incorporated into the harassment count. Just because they may be barred for retaliation, why couldn't they be part of our harassment? Because they were part of the complaint, the Second Amendment complaint. Those weren't discrete acts. Those were things that happened over and over again, a continuing pattern of harassment. Requiring him to work without a partner, frequently changing his starting time, requiring him to use his own car, etc. All of these, by the way, violated the city's own rules and standards. Well, the city, I'm just going to pick one thing. The city's brief, it describes your response to the city's motion for summary judgment as not organized in any logical fashion. The court has attempted to review all of the record evidence of retaliation. The court is critical of these responses and says when did he complain, to which supervisor. There's another place where there's a citation to Mr. Summerfield saying he's not sure who assigned him the high crime area. There are just a lot of rather discretionary calls here. But, I mean, we're suing the city. We're not suing a particular officer and the commander. But for the city to be able to defend effectively, they need to know who told him to do what. Was it a supervisor who told him to have the hospital duty or to not get the car, all these things that you're talking about. I understand, but doesn't that presuppose that the city presented that in the motion for summary judgment? All the city has to do is, no, no, I think you're putting a burden on the person who does not have the burden of proof. This is important. The city does not have the burden of proof on Mr. Summerfield's lawsuit against it. It just has to say, as far back as Chief Justice Rehnquist goes, that you have not come forth with enough evidence to allow a jury to rule for you. Now, usually people say more than that. Usually people will point to things, but they don't have to. Very good. I thought we had demonstrated there were materially disputed facts regarding retaliation. In fact, the district court even said that these affidavits do establish that the city did retaliate. However, the district court went on to say that there wasn't enough specificity, even though the defendants never argued it. But again, I would— Is the only issue here your attorney's fees? Is the only issue? Yeah. No, I don't think so, because I think Mr. Summerfield should have a trial on retaliation and the harassment claim. Well, didn't he get a judgment? He did. He did. For part of the harassment being— For $540,000? No, that was the second trial we had against the sergeant. He got $540,000 there. But as far as the verbal attacks, he got $30,000 in the trial against the city. What was the $540,000 for? That was for punitive damages. But that was against the sergeant personally. That's a different legal theory. That's correct. That's correct. But as far as the jury against the city, they didn't hear anything about the city requiring Mr. Summerfield to work alone in dangerous areas without a partner and all of these other things that we say, even though these things happened over and over again. What did they hear? All they heard was that Sergeant Kinesiak made these verbal attacks against him, such as, you know, burn, Jew, burn. Did they know how egregious these comments were? Did they know how egregious these comments were? Yeah, I mean, from the evidence you submitted. I hope so. Well, how many? That's what I'm saying. How many were there? In these briefs, there's only one comment. There were several comments, such as Germans are like niggers. They cause this Jew problem. Our briefs only show one comment that I can see. I thought there were several comments. But I'd be glad to submit a… Well, yeah, I don't want to see them. They're egregious, no question. So he's gotten how much so far? 570,000. That's amazing. Well, I don't know if we're going to collect them to 540,000. That's ridiculous. How much more does he want? Well, Your Honor, it's just a matter of… How much more does he want? Just answer me, will you please? I don't know, Your Honor. You don't know? No, I don't. And you want what? 430,000? No, the district court gave 410,000, and then I had somebody help me at trial that got like an 18,000, so we got a total of 430,000. So have you gotten that? No. What have you gotten? Zero. So you're asking for $430,000 in attorney's fees. No, you're asking for the million and a half, I thought. That's correct. And you object. I mean, you're in your rebuttal time. Oh, okay. I'm sorry. Thank you. I'm sorry. Did I interrupt, Your Honor? I was just going to say if you wanted to say a word. I mean, the methodology that the district court used looked appropriate to me, figuring out what were the reasonable hours, figuring out what was the reasonable hourly fee, multiplying it, and then deciding whether a Lodestar adjustment is necessary. That's quite routine. Should I save that for the rebuttal? You may save that for rebuttal if you prefer. All right. Thank you, Your Honor. All right. Ms. Masters. May it please the Court. Mr. Summerfield brought serious allegations of discrimination and retaliation arising from his employment with the city. One claim was dismissed. The city prevailed on summary judgment on others, and three were tried, including retaliatory harassment, discriminatory verbal harassment for national origin and religion. Mr. Summerfield ultimately won a $30,000 jury verdict on his two discrimination verbal harassment claims and an attorney's fees award of $430,000. There was also a separate case that Mr. Longo referenced that was against Mr. Kanasiak only, and that's just concluded. Judgment was entered in that, I think, last week. Today I will address why the rulings granting the city summary judgment on Mr. Summerfield's discreet act retaliation claims and reducing his fee award from $1.5 million to $430,000 were proper. The city is going to stand on the brief on all the other issues. Mr. Summerfield's summary judgment retaliation submission suffered some entitled the city to summary judgment on its discreet act retaliation claims. His EEOC retaliation charge filed in July 2006 alleged that retaliation began in June 2004 after he filed his EEOC discrimination charge. He testified in his deposition that only Sergeant Kanasiak retaliated against him, yet he sought to recover for claimed misconduct that occurred outside the scope of his EEOC retaliation charge and for misconduct alleged by others than Kanasiak. Now, you place a lot of weight on this one little exchange in his deposition where somebody says, you know, did anybody else discriminate? No, it's Kanasiak. But it seems to me, taking the deposition as a whole, he might not be limiting himself to Kanasiak. Isn't that an unfair way to look at the evidence? Your Honor, we don't believe so because at the end of the day, what Mr. Summerfield needed to do was then identify, if he thinks it's other people, who did what when in order to show retaliation. I mean, he says, you know, how is he supposed to remember? I mean, not everybody keeps a log, right? You know, and so if somebody says something profoundly offensive to you, do you run back and make a note on your computer about it or what do you do? Well, Your Honor, the verbal retaliatory harassment claim went to trial. So that's not part of what's up on appeal. So you just say this is about the hospital and the squad car and the partner and the high crime neighborhoods. Correct. And he should be able to identify who gave him those assignments and when, in particular, because as he sets forth in his brief, he claims that a bunch of those assignments, quote, indisputably, began in 2002. And then they continued after 2002. Your point is if they were in 2002, then they couldn't have been in retaliation for a 2004 complaint. Absolutely. That is part of it. And then the other part of it is you've got to pinpoint if you think it's all these other people who are doing wrongful assignments to you, you have to tell us. Identify who it is. And that was the district court's point in those affidavits. He just threw everybody together without dates, without specific identities. He said, they were my supervisors, but we need to know who. Was he ever injured as a result of these assignments he disapproved of and so on? Your Honor, there's no claim as to that. Pardon? There is no claim as to that. So he was frightened or angered or something, but he wasn't actually injured. So he's never attacked at the hospital? Oh, correct. There's no claim as to that. And you assume he would have said so if there had been some injury? He eventually gets the dog handler position, right? Right. Through the grievance process, he gets the dog handler, the canine handler position. So it's our contention that the district court correctly rejected his submissions, is not showing that there was a genuine issue of material fact as to the key part of a return. Was he born in Germany? Your Honor, I don't believe so. I believe he was born in the United States. In the United States. So he just is of German origin. Mr. Longo is shaking his head no, so maybe we can ask him. Okay. Well, certainly. At any rate, it is our contention that the district court properly concluded that the evidence did not support, create a genuine issue of material fact regarding but-for causation. Can you remind me, did the city put forth evidence, I won't say introduce, but in the summary judgment materials to the effect that these various forms of duty are part of the job description? It seems to me I remember something about the hospital duty being something that people do. Yes, absolutely. There was evidence that hospital duty was just part of the regular assignments, so were assignments to high crime areas. There was evidence that he, that Mr. Summerfield was a relief officer, and that's why shifts would change. And his own testimony that he had not had a partner since 2002, he had not had a beat car since 2002, that that was actually basically his assignments. These were his jobs. So are relief officers typically not given cars? Oh, they would be given, is Your Honor referring to beat cars or referring to something else? Maybe you're getting beyond my knowledge of how the police department assigns cars, but I just want to know was there anything unusual about the way he got cars given his status as a relief officer? No, that would not be. So there's evidence in the record that would tell me that. That he, right, correct. What are these Nazi medals that are mentioned? I believe those were excluded from evidence. Pardon? I believe those were excluded from evidence. But, yes, we did have evidence that he had Nazi memorabilia. Who asked them to be excluded? That Mr. Summerfield in his possession had Nazi memorabilia, and he had asked that they be excluded from evidence, and that motion was granted. Moving on to attorney's fees, Mr. Summerfield's arguments fared no better. He challenges the methodology used by the court and the conclusions reached. Both were proper. He was entitled to recover only for hours reasonably spent to achieve the level of success accomplished, here prevailing on two out of five claims for $30,000. He still gets a lot of hours, right? It starts out at $3,742 and then gets pared back to $2,878. Correct, and then he still recovers $430,000 on a judgment of $30,000, and we believe that the district court followed the proper methodology that a request of $1.5 million for this type of case was just incredibly extravagant. I assume that there was a distinction drawn between the initial discrimination and the retaliation on a number of hours. Your Honor, there was in terms of ultimately the court taking the 50% reduction, if that's what your Honor is referring to. My recollection is the court said it's actually very hard to allocate hours very precisely to one theory or another, but overall that 50% discount was what the court, first the magistrate judge and then the district court who looks at it quite carefully too, decides is appropriate. Right, that's correct, and what I meant, if I could clarify my response to Judge Kaney, is that in this case he succeeded on the discrimination charges. So to the extent that there's allocation, it's because he won the discrimination charges, but yet the case was litigated in such a manner by Mr. Somerville's counsel that it was not possible to go through and distinguish which hours would have been for only the successful claims and which hours went to the unsuccessful claims. But that was, well, you ended up with two lawsuits, one against the city, one against the sergeant individually or his supervisor. Correct. And the 50% was just an arbitrary way of saying half the hours went to one and half the hours went to the other, is that right? Oh, let me clarify this. The lawsuit against Sergeant Kanasiak is an entirely separate proceeding. So when Mr. Somerville says he recovered $540,000. Is it in state court or federal court? It's in federal. Federal court. And so this is, the fee award is just about the fees that are accumulated in this case, which ends up going to trial or ends up just against the city. Initially there was a count against Sergeant Kanasiak that was dismissed for emotional distress. After it's dismissed, there's a bunch of other proceedings in this court and on this case, and then ultimately there's a separate lawsuit brought against Sergeant Kanasiak. Well, maybe I'm still confused. You have two lawsuits, right? Correct. One is concluded? They're both now concluded, but this is the appeal only for the lawsuit. Right, I understand that. So one is concluded, attorney fees are awarded in that. Correct. No contest to those are to be paid eventually, I assume. Well, eventually, yes. We're not disputing the $430,000. Right, okay, right. And then you had the second lawsuit, and that's what we're here about today. We're here on the first lawsuit. Well, maybe first and second is not the word. Against the city, it's not been concluded. That's why you're here today. We're here today on the lawsuit against the city. The lawsuit against the city was the first filed lawsuit, right? Correct. And also the first to end. The individual must have been 1981 or something, or 1983, lawsuit against Kanasiak as a separately filed lawsuit, which you said the judgment was just entered last week. Correct. So obviously there's no appeal yet. Yes, correct. No appeal yet. Yes. We're hoping there won't be, but yes. I'm trying to get back to the hours and the difficulty of separating the hours spent on one lawsuit versus the other. But these hours, I think, are the 3,700 and whatever it was, hours are all for this lawsuit against the city. That's correct. The $1.5 million claim is for just one lawsuit. Only for the city lawsuit. I understand that. But those were pulled out by your opponent as the hours spent on this case versus hours he spent on the other case. Your Honor, I don't believe that's what happened. That is just the hours from this case on all of the claims. The hours for the other case have not even been adjudicated. It's my understanding a fee petition hasn't been filed yet in that other case. Oh, well, I thought it was concluded. Well, judgment was just entered last week. And the fee petition has yet to be filed in Somerfield 2. We refer to it as Somerfield 2 in our briefs. All right. Okay. If the court has no further questions, it's our contention the methodology followed here was proper. The fee award of $430,000 accurately reflects the amount of hours that were necessary and for which Mr. Somerfield's attorney can be compensated. And we would request that all of the rulings in this case that are being challenged on appeal be affirmed. Thank you very much. All right. Thank you. Mr. Longo. Thank you, Your Honor. Just some points of clarification. The retaliation involves retaliating against him because he's verbally complaining. This is before he files a written complaint with the EEOC. But I thought you didn't make that clear. I mean, initially it looked as though it was retaliation for filing the 2004 charge with the EEOC. Part of it. Part of it. But now you're expanding it to say, well, maybe he was having private complaints or conversations. I don't see where that is clear. No, no. We've said that since 2000 some things. In 2002 the city had, after he started complaining that Kinesiak is saying these things to me, started doing these things against him, such as requiring him to work alone in dangerous areas. By the way, he was not a relief officer. He was a regular officer who was supposed to have a partner. And changing his starting times, et cetera, requiring him to work hospital duty, which though part of his duties was by custom assigned to people, officers with lower seniority, those who were performing less. So if you were assigned to that, other officers would view you badly. It was humiliating. So all of these things were happening in retaliation because of the verbal complaints. Eventually he did file an IAD claim and an EEOC claim. I just hope that was clear. And as far as I think, as far as the attorney's fees, the court used. But that's really a hostile work environment claim. That's not a retaliation claim. Well, we were barred from even mentioning that part of the hostile work environment. Even though those allegations were part of the complaint, they were part of the harassment count, the hostile work environment count, as I had mentioned earlier. But it's also retaliation because you're complaining, so now in retaliation you're going to have to work alone. No more partner for you, even though it's against city rules to require officers to work alone without a partner in dangerous areas. And all the other things that we mentioned, requiring him to use his own car for work-related matters, et cetera. As far as your Honor had asked me a question about as far as the attorney's fees, I believe, and perhaps I'm not correct, but I believe it's denial because the wrong methodology was used. And I have some arguments as far as abuse of discretion. As far as wrong methodology, the methodology is to concentrate on the lodestar and nothing else. We gave supplemental authority, which really just recites Purdue, that the only and rare and extraordinary circumstances, must the court deviate from the lodestar. The magistrate or judge focuses tremendously on the wrong method, that is the Johnson factors. And that's why I contend that's the wrong method. And also the wrong method involves ignoring the only evidence before the district court, that is undisputed affidavits. They weren't undisputed, though. That's one problem. You keep saying undisputed, but the city disputed them. Maybe you don't like the evidence they disputed them with, but they did dispute them. Well, unless I'm not reading it correctly, the only thing the defendant's attorney says in his affidavit is, I charge $275. Yeah, and so $395 is too much. And the affidavits, some of them didn't even speak of practice areas. Some of them were quite vague. There was no indication that the affiance knew exactly what was involved in this case. And so the district, first the magistrate judge, then the district court judge just find them, as compared to the city's contest, not undisputed. They're disputed. But, Your Honor, just because the defendant says, I charge $275 and nothing more, doesn't mean that's a dispute. And it doesn't mean that it's not disputed just because you say, well, I charge $395. I mean, there's a question whether that's a reasonable fee for this field, for the complexity of this case, for what we've got in front of us. I would think that there would have to be. And for you to call it not disputed just doesn't seem right to me. Oh, I would think it would have to say that this is the reasonable market rate, $275, and this is why I charge it. And there's no sentences like that. And even $275, would that be a market rate for defense counsel that receives value in business and gets paid every month? Is that a market rate, a reasonable market rate for plaintiff's counsels that work at risk? Those are questions on one side, but questions on the other side are what was the field of work? How reasonably were you handling it? There's a lot of frustration that comes through in the district court's opinion about repetitive and annoying and insubstantial motion practice and all sorts of other things that would legitimately enter into a fee award. I would think, though, even if all that is accepted, I would think there's a triple slashing. The $395 was already below market rate. That's not what the district court found, though. The district court found market rate would be $300. That's what was awarded. That was provided. But as far as we have affidavits, even if we say some of the affidavits didn't discuss fields, we have affidavits from three employment lawyers that the court recognized and the defendants recognized that say that $395 is well below the market rate. So we're starting off with well below the market rate. It's slashed further to $300. The court accepted an attorney who had only 13 years of experience, if I remember correctly, who helped me at the trial, gave her $265. So I have 29 years of experience. That's only a few dollars more. So that's the first slash. Second slash is we're slashing $864. And then an arbitrary 50% slash. Well, the 50% is the ballpark. I mean, we have cases that say when it's really impossible, partly because of the records that you kept, to separate out what you were doing for one thing and another, the court has no choice but to make an overall assessment. We can call it a ballpark if you want. I understand that. But, Your Honor, I also believe that the case law says that the defendants have the burden to show what were the non-successful counts. Defendants have not done that. And there's little to no discussion in the court's opinion saying that we've reviewed the time records and they do not segregate what this relates to this relates to that. These are not part of a common core of facts. There's no discussion of common core facts. I don't understand what opinion you were reading. Because, you know, the magistrate judge really spends a lot of time going through this record. Very carefully pales off some hours, leaves a lot of hours in. I don't see any little to no discussion about whether certain counts were part of a common core of facts, whether they sought the same relief, whether they were distinct from the injury that was provided, as discussed in the Mary Beth case. I didn't see that. All right. Well, I will take your point if you can wrap up. May I just say one other thing? Sure. The defendants spend 7,000 to 9,000 hours. And let's look at what happened here. We have an EEOC concluding an investigation in only five months, even though they get thousands of claims. They say there's discrimination. We have that. The city's own investigator finds there's discrimination. A second time the EEOC comes back and says there's discrimination. Okay. We know all of this. So we will take the case under advisement and move on to the next case. Thank you.